ROSENBERGER v. SHUBERT et al.

(Circuit Court, W. D. Missouri, W. D. November 3, 1910.)

No. 3,525.

1. DISCOVERY (§ 80*)—FEDERAL STATUTE—REQUIRING PRODUCTION OF BOOKS IN ACTIONS AT LAW.

Rev. St. § 724 (U. S. Comp. St. 1901, p. 583), which provides that "in the trial of actions at law" the federal courts may on motion require a party to produce books or writings in his possession which contain evidence pertinent to the issue in cases and under circumstances where he might be compelled to produce the same by ordinary rules of proceeding in chancery, confers power on the courts to require a party to produce books before as well as at the trial, where it would be required on a bill of discovery, but not otherwise.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 103, 105; Dec. Dig. § 80.*]

2. DISCOVERY (§ 97*)—FEDERAL STATUTE—REQUIRING PRODUCTION OF BOOKS IN ACTIONS AT LAW.

To authorize a federal court to require a party to produce private books and papers for the inspection of his adversary before trial in an action at law, under Rev. St. § 724 (U. S. Comp. St. 1901, p. 583), it must be shown, not only that they contain evidence pertinent to the issues, but that they are in the possession or under control of the party against whom the motion is made, and that the moving party cannot secure the evidence from any other source.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 122–125; Dec. Dig. § 97.*]

3. DISCOVERY (§ 80*)—DEFINITION.

"Discovery" is the disclosure by the defendant of facts, titles, documents, or other things, which are in his exclusive knowledge or possession, and which are necessary to the party seeking the discovery, as a part of a cause of action pending or to be brought in another court, or as evidence of his rights or title in such proceeding.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 103, 105; Dec. Dig. § 80.*

For other definitions, see Words and Phrases, vol. 3, pp. 2093–2095.]

Action by J. C. Rosenberger against Lee and Jacob Shubert. On motion to require production of books. Sustained in part.

A. N. Gossett, Clyde Taylor, and K. C. Reed, for plaintiff.
Frank Hagerman and Kimbrough Stone, for defendants.

VAN VALKENBURGH, District Judge. This is an application by plaintiff, under section 724, Rev. St. (U. S. Comp. St. 1901, p. 583), for a rule upon the defendants to produce, before trial, for the inspection of plaintiff, certain books and papers, and for permission to take copies of entries therein; the case now being at issue. It is alleged

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the books and writings sought contain evidence pertinent to the issue; that they are necessary to the plaintiff in the preparation of his case for trial. The books and papers desired are a certain book or books, commonly known as a "weekly statement book," kept during the period from September 4, 1908, down to the filing of the motion, to wit, September 30, 1910; the same being alleged to be a complete original record of all of the income and expenses of said theater for said period; also a certain pass book or pass books with the New England National Bank of Kansas City, Mo., showing deposits made from time to time and day to day by the defendants of the income from the Shubert Theater—the allegation being that no moneys were deposited for said defendants in such bank, except such moneys as were derived from the operation of said theater. Also these books are said to be in the possession and under the control of one Earl Steward, as general agent of said defendants.

The plaintiff was attorney for the defendants in a certain cause begun in this court wherein one O. D. Woodward and others were complainants and the Shuberts were defendants, which was subsequently appealed to the Circuit Court of Appeals for this Circuit, resulting in a decree causing the complainants to deliver to the defendants herein the possession, control, and management of the Shubert Theater in Kansas City, Mo., and practically abrogating the contract theretofore existing between the complainants in that case and these defendants. This is a suit upon quantum meruit for the recovery of a balance of attorney's fees claimed to be due from defendants to plaintiff. Plaintiff desires the information sought to be obtained through the instrumentality of this motion for the purpose of showing the amount in controversy in the former action and the financial ability of the defendants to pay the fees sued for. This motion is resisted by the defendants upon two grounds: (a) That section 724 does not authorize inspection of the books of the opposing party before trial; and (b) that plaintiff is not honestly making this motion for any reason which could be within the purview of the statute, that this is an attempted invasion of the business secrets of defendants by one who is inimical to their every interest, and that no such showing is made as would entitle plaintiff to the relief sought.

Section 724, upon which this motion is founded, is as follows:

"Sec. 724. In the trial of actions at law, the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by ordinary rules of proceeding in chancery. If a plaintiff fails to comply with such order, the court may on motion, give the like judgment for the defendant as in cases of nonsuit; and if a defendant fails to comply with such order the court may, on motion, give judgment against him by default."

There has been much conflict of opinion on the question whether this section authorizes an order for the production before trial of books or writings. It must be conceded that the weight of authority is to the effect that the federal courts in civil actions at law may, in proper cases, order production of books and writings containing pertinent evidence,

not only at the trial, but after the joining of issue and before trial, for inspection, in order to prepare for trial. Practically all decided cases up to that time are collected and discussed by Judge Bradford, of the district of Delaware, in the case of Bloede Co. v. Joseph Bancroft & Sons Co. (C. C.) 98 Fed. 175. The court in that case arrived at the conclusion that under proper circumstances the party is entitled to inspection before trial, and may take copies and make abstracts under the order and direction of the court. This case was followed by Lacombe, Circuit Judge, in Gray v. Schneider (arising in the Southern district of New York) 119 Fed. 474. And again in Carpenter et al. v. Winn, 165 Fed. 636, 91 C. C. A. 301, the Circuit Court of Appeals for the Second Circuit took occasion to approve the doctrine announced in Bloede v. Bancroft, supra. The opinion per curiam says:

"The decisions rendered in different districts are not harmonious. A very full review of these decisions will be found in Bloede v. Bancroft (C. C.) 98 Fed. 175, where it was held that production of the books in advance of trial could be required. Since that decision, however, the Circuit Court of Appeals in the Third Circuit has held the other way. Cassatt v. Mitchell Coal & Coke Co., 150 Fed. 32, 81 C. C. A. 80, 10 L. R. A. (N. S.) 99. A majority of us are in accord with the reasoning and conclusion in Bloede v. Bancroft, and since the practice there approved has been the practice in this circuit for several years, and is in harmony with the provisions of the state Code of Procedure, we are unwilling to adopt the conclusions of the Circuit Court of Appeals of the Third Circuit. Moreover, the weight of decisions in the different circuits seems to be in accord with Bloede v. Bancroft. It is unfortunate, perhaps, that there should be diversity in the practice in different circuits; but the remedy for that would be an application for certiorari to the Supreme Court."

This court is advised that this case is now in the Supreme Court upon such writ.

In Cassatt et al. v. Mitchell Coal & Coke Co., 150 Fed. 32, 81 C. C. A. 80, 10 L. R. A. (N. S.) 99, the Circuit Court of Appeals for the Third Circuit held that section 724 does not confer the power to require a party to produce books before trial. If a party to an action, at law desires inspection of books in his adversary's possession before trial of action, he is left to his chancery remedy by filing his bill for discovery. This conclusion is based largely upon the following considerations: First, from the wording of the section, which authorizes federal courts to make orders for the production of books or writings, not "in actions at law," not "in proceedings in actions at law," but "in the trial of actions at law," from which it is argued that to require such production before the trial would be placing a strained interpretation upon the meaning of the language used. Attention is therein called to the fact that a court of chancery had the power to require a party to produce books or writings in a case in which that court was called on to administer relief as well as to compel discovery, either before or at the final hearing, and that, therefore, the language of the section under review seems to restrict the remedy in this case to proceedings at the hearing. Second, it is urged in that case that:

"If the order be to produce at the trial, and the party against whom it is made fails to comply therewith, or, producing the books, insists that they are not admissible, the ruling of the court awarding judgment against the defaulting party for nonproduction, or its ruling on the question of the admis-

sibility of the books, may be the subject of a bill of exceptions and be reviewed on a writ of error bringing up the final judgment in the action. But if the order be to produce before the trial, and the party against whom it is made defaults, how can judgment of nonsuit or judgment by default be entered? A judgment must be founded on a record that will support it. An order to produce before the trial constitutes, at common law, no part of the record of the action. Neither can it be excepted to. It is well settled practice in our federal courts that the assignments of error in an action at law are founded only on the record of the case and the bill of exceptions taken in the course of the trial."

The court further says:

"An order to produce before trial, if it be disobeyed, will be wholly nugatory, for the reason that the penalty prescribed by the section—the entry of judgment against the disobedient party—cannot be lawfully imposed. If this be not so, then an erroneous ruling of the court made at the trial upon an order to produce at the trial may be corrected by an appellate tribunal, while it cannot be in the case of an erroneous ruling concerning an order to produce before trial."

This for the reason, as it is said, that such an order cannot be reviewed on a writ of error, because it constitutes no part of the record. This very matter, however, was brought before the Circuit Court of Appeals for review on a writ of error upon an order of the Circuit Court requiring the defendants to produce the books and papers described in the petition before trial at a specified time and place for the inspection of plaintiff, with leave to the plaintiff to make copies thereof. The court construed this to be a final decision reviewable on a writ of error. It is true that the application for the rule there took the form of a petition, which was met by answer, and the Court of Appeals treated the order below as a final decision of all the matters involved in that proceeding, which is described as collateral to and independent of the action at law. It was, however, a proceeding expressly based upon section 724 of the Revised Statutes.

The same court, in Pennsylvania R. R. Co. v. International Coal Mining Co., 156 Fed. 765, 84 C. C. A. 421, held:

"An order made by a Circuit Court under Rev. St. § 724, requiring a party to an action at law to produce books or writings at the trial, is an interlocutory and not a final order, and is not reviewable on a writ of error prior to final judgment in the cause."

The court further says:

"That under the rule to, show cause the objections of the defendant to the power and jurisdiction of the court to make the order were heard and overruled, whether prematurely or not, does not preclude the defendant from taking 'exceptions to the rulings of the court at the trial, requiring obedience to the order, or concerning the admissibility of the books.' Such exceptions and the rulings thereon can clearly be made a part of the record of the case, and subject to the operation of a writ of error sued out on its final decision. It follows, therefore, that the order of the court below complained of was one of those subsidiary orders, the legality and propriety of which must be determined at and during the progress of the trial; that it was interlocutory, and not final, and therefore not reviewable by this court on writ of error."

It would seem, therefore, that the argument of the Circuit Court of Appeals of the Third Circuit that section 724 does not confer authority to produce books and writings before trial, because of the

fact that such order could not be reviewed, is shorn of much of its force by the action and expressions of that court in the two cases last above cited. From what has been said it would seem that a judgment of nonsuit or by default would be such a final order as would support a review, and that an objection at the trial to the production of the books and papers, and to the admissibility of the evidence therein contained, would preserve in the record of the whole case a question for the review of the appellate court, and that such a criticism should not render the law inoperative to effect the production of such books and papers for inspection before trial, provided such procedure is otherwise unobjectionable.

The section provides that the court "may require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery." This would seem to apply to all such cases and circumstances, and all such ordinary rules of proceeding. The cases uniformly point out that this is a summary proceeding in actions at law, intended to take the place of and do away with the more indirect procedure of filing bills of discovery.

In Finch v. Rikeman, 2 Blatch. 301, Fed. Cas. No. 4,788, Judge Betts said:

"The plain limitation to the right to the interposition of this court by giving final judgment is that the application by a party for the production of papers be one which a court of equity would sustain on a bill of discovery."

In U. S. v. Youngs, 10 Ben. 264, Fed. Cas. No. 16,783, Judge Choate said:

"The reference in the statute to proceedings in chancery, evidently meaning by bill of discovery, is not used as limiting or designating the parties against whom the power of the statute may be invoked. It appears merely to and is used to define the cases and circumstances under which the power will be exercised; that is to say, the evidence must be of that kind which can be compelled by a bill of discovery, and the circumstances necessary to be shown upon a bill of discovery as to the relevancy of the evidence and the necessity for its production, etc., must be shown to compel its production on motion."

And again, in U. S. v. Hutton, 10 Ben. 268, Fed. Cas. No. 15,433, the same court said:

"The right of one party in a suit to demand an inspection or copies of books and papers in the possession of the other, either for the purpose of preparing a pleading or of preparing for trial, has long been recognized as a right which the courts should, in some form and under proper circumstances, enforce. Independently of statutory provisions, the right has generally been enforced by bringing a bill of discovery in chancery for the purpose. But to avoid the delay and expense of such a proceeding, statutes have been passed. both state and federal, substituting for the bill of discovery a proceeding in the action itself, by way of motion and order. The production of books and papers is, so far as the federal courts are concerned, regulated by Rev. St. § 724."

In Lucker v. Assurance Co. (C. C.) 67 Fed. 18, Judge Simonton said:

"It seems, however, to be a narrow construction of section 724 to limit its operation to the actual trial. Its purpose, clearly, is to provide a substitute for a bill of discovery, and to secure at law the purposes which such a bill

would subserve. All the cases recognize this. On a bill for discovery, necessarily, the facts sought would be discovered before trial."

To this effect is the great weight of authority that the remedy provided by this section is, in its most practical application, to be regarded as a substitute for a bill of discovery. While this section has not been construed by our Circuit Court of Appeals, nevertheless it has not remained unconsidered at circuit: First, by Judge Love in the Northern district of Iowa, in which he sustained a motion to inspect, examine, and take copies, with the view of securing information, and offering their contents in evidence. (Gregory v. Railroad Co. [C. C.] 10 Fed. 529); and again by Judge Thayer in Exchange Nat. Bank of Atchison v. Washita Cattle Co. (C. C.) 61 Fed. 190, in which he said:

"The statute (section 724) says nothing about an order for the inspection of papers and permission to take copies of entries, etc.; but it must be presumed that the purpose of compelling a party to produce his books is to enable the opposite party to examine them, and, if necessary, to make copies of entries. Therefore it is reasonable to hold, and the court so decides, that the power to order the production of books includes the power to grant an inspection. And so it was ruled by Judge Love in Gregory v. Railroad Co., supra. In some cases it has been decided that, on motions of this kind, the proper order to be entered is to require the production at the trial. Merchants' Nat. Bank v. State Nat. Bank, 3 Cliff. 201, Fed. Cas. No. 9,448; Iasigi v. Brown, 1 Curt. 401 [Fed. Cas. No. 6,993]. Other courts have adopted the practice, which seems to be more reasonable, of granting an inspection previous to the trial."

Further discussion of this disputed proposition would be largely academic, in view of the fact that the entire matter is now before the Supreme Court of the United States on writ of certiorari. Enough has been said, however, to make clear the reasoning upon which this opinion is founded, and the further fact that the production of such books and papers before trial for inspection in proper cases and under proper circumstances is the practice that may fairly be said to prevail in this circuit.

We turn now to a consideration of whether the remedy should be applied under the conditions existing in the case at bar. It will be recalled that the right to require production and to grant inspection before trial is founded largely upon the assumption that it was the purpose of Congress to substitute this more direct method for the more cumbersome procedure of a bill of discovery. Therefore it may be assumed that the circumstances and conditions governing such proceedings in chancery should obtain here. It must be borne in mind that the law looks with disfavor upon any undue and unnecessary intrusion into the private affairs and business secrets of litigants, and where such a remedy is permitted it must be under clear and urgent necessity and the protection of strict safeguard against abuse. I refer again to the language of the court in Finch v. Rikeman, supra:

"It is plain, from the language of this statute, that Congress did not intend to invest in parties litigant an unrestricted right to all written evidence in the possession of an adverse party, which might be pertinent to an issue in a trial at law; the qualification being explicit that the right is allowable only in cases and under circumstances in which the court of chancery, by the

ordinary rules of proceeding in that court, would compel the production of books and documents."

And Judge Choate, in U. S. v. Youngs, supra, further said:

"And the circumstances necessary to be shown upon a bill of discovery as to the relevancy of the evidence and the necessity for its production, etc., must be shown to compel its production on motion."

In Coit v. North Carolina Gold Amalgamating Co. (C. C.) 9 Fed. 577, Judge Butler said:

"Care is required, and should be observed by the court, to avoid unnecessary exposure of a party's private affairs, or improper prying into his case, by limiting the order for production and examination to what is shown to be important to the mover's case."

Judge Love said:

"It will be seen, by examining the foregoing provision, that the court is to govern its discretion by the practice in such cases in chancery."

And so Judge Bradford, in Bloede v. Bancroft, which is the leading case relied upon as vindicating by its reasoning the right to inspect before trial, has this to say:

"But it will not be awarded to gratify mere curiosity, or to enable one party to make undue inquisition into the affairs of another. Nor will the court extend discovery beyond the legitimate requirements of the case to be aided thereby. So, under section 724, production of books or writings is authorized only so far as they contain evidence pertinent to the issue. An exposure of business details and secrets not pertinent to the issues, to enable one to discover clues to guide him in conducting an investigation of possible claims or defenses against an adversary, is not to be tolerated."

In American Banana Co. v. United Fruit Co. (C. C.) 153 Fed. 943, Lacombe, Circuit Judge, the writer of the opinion in Gray v. Schneider, supra, and one of the bench of the Second Circuit which decided the case of Carpenter v. Winn, supra, said:

"In a proper case a party may be required to produce books and writings under Rev. St. § 724, in advance of trial; but such a direction should only be made when the situation is clearly such that in no other way can the ends of justice be properly subserved. The 'trial' of an action at common law is to be had before a court and jury, and questions as to the admissibility or inadmissibility of individual items of evidence can be ruled on intelligently and fairly only by the judge who is presiding at the trial and is fully informed as to all the circumstances which prior evidence has disclosed. It puts an unreasonable burden upon a court, already fully occupied, to sit in advance of the trial to oversee the clerk with whom papers are deposited, and to be called upon summarily and at intervals to determine whether some particular letter or telegram is one which a plaintiff might fairly inspect, or is concerned with matters which are none of plaintiff's business. Sometimes no other course can be followed, but such is not the case here. The averments of the complaint, the statements in the affidavits, and the specifications in the notice of motion all show that the plaintiff is supplied with information amply sufficient to enable it to go to trial and undertake to make out its cause of action by there and then calling for such writings as it needs, provided that their presence on the trial is secured by order made under this section. The section does not contemplate that plaintiff shall sit down at leisure, in the absence alike of court and jury, and during days or weeks prepare and practically put in its side of the controversy, leaving defendant to meet the case thus made in the hurry of the trial."

182 F.—27

Discovery: is defined to be:

"The disclosure by the defendant of facts, titles, documents, or other things, which are in his exclusive knowledge or possession, and which are necessary to the party seeking the discovery as a part of a cause or action pending or to be brought in another court, or as evidence of his rights or title in such proceeding." Black's Law Dictionary; Michie's Encyc. of U. S. Supreme Court Reports, vol. 5, p. 350.

Concerning bills of discovery the Supreme Court has said:

"The rule to be applied to a bill seeking a discovery from an interested party is that the complainant shall charge in his bill that the facts are known to the defendant, and ought to be disclosed by him, and that the complainant is unable to prove them by other testimony; and when the facts are desired to assist a court of law in the progress of a cause, it should be affirmatively stated in the bill that they are wanted for such purpose. * * * Unless such averments are required, is it not obvious that the boundaries between the chancery and common-law courts would be broken down, and that chancellors would find themselves, under bills for a discovery from an interested party, engaged in the settlement of controversies, by evidence aliunde, which the common-law courts could have procured, under the process of a subpœna, in delaying proceedings at law, by pretenses that a discovery is wanted, for the sake of justice, * * * though the defendant might have availed himself of the evidence of third persons, to establish the same facts, in the progress of the cause." Brown v. Swann, 35 U. S. 497–502, 9 L. Ed. 508.

In the present case the plaintiff requires (1) the bank pass book or pass books of defendants, showing the entries of deposits made by defendants in the New England National Bank of Kansas City, Mo., of moneys received by defendants from the operation of the Shubert Theater in Kansas City, Mo., during the period from September 4, 1908, to the date of the examination prayed for; (2) the book and books of the defendants, commonly called the "weekly statement books," being the books of record regularly kept in the ordinary course of business by the local business agent at Kansas City, Mo., of said Shubert Theater, and being the books or records wherein are usually kept the statements and weekly reports of the financial receipts and disbursements received and paid out in and about the operation of the Shubert Theater in Kansas City, Mo., covering and during the period from September 4, 1908, to and including the date of the examination, and states that he cannot properly prepare this cause for trial without the opportunity to see and examine all of said book or books prior to the commencement of the trial.

It is apparent that such an examination would place the plaintiff in possession of practically every fact incidental to the financial management of the Shubert Theater for a period of more than two years, its exact contracts with all theatrical companies, and its percentages of profits. The defendants contend strongly against the granting of this motion because, as they say, "they regard this entire movement as a contemplated invasion of their business secrets by one who is inimical to their every interest." Under such conditions it is incumbent upon the court to inquire whether such an urgent necessity exists as warrants the examination prayed. It will be observed that upon the face of the motion it appears that the substance of all that is requested under the first section above, to wit, the bank pass books, etc., can

readily be shown from other sources. In addition to this, in their memorandum to the court, counsel for plaintiff say:

"The production of these papers in response to subpœna will not give the remedy which this statute was intended to give and does give. We are entitled, in preparation for trial, to know whether these books will state the true and ultimate facts on this proposition. If they do, then they are the best, most concise, and proper evidence. If they do not, then we will have our opportunity to produce other evidence of the ultimate facts. This we would not have, if such books are produced for the first time at the trial of the case."

An affidavit has been produced on behalf of defendants to the effect that during the theatrical season of 1908 and 1909, which ended about the 19th day of June, 1909, plaintiff had full and free access to all the books and papers relating to the business of said Shubert Theater, and up to the latter part of May, 1909, kept in close touch with that business; that during February, 1909, the weekly statement book for the year up to that date was in plaintiff's possession for several days; and that in the latter part of May, 1909, plaintiff was given full information concerning the business of said theater up to that date.

Plaintiff, by counter affidavit, states that about February 1, 1909, as counsel for the defendants in the litigation then pending, he did have the weekly statement book for the then current theatrical season, and in that way became familiar with the records up to that time, but that he was not examining the books for any purpose, except with reference to an application then pending in the Circuit Court of Appeals, nor with any view to learning the income of the theater for use in the present suit; that he had no occasion to examine said books or records showing the income of the theater after February 1, 1909; that he did, in May, 1909, have a conversation with defendants' agent, in which he was told that the theater had been profitable since the defendants had been restored to possession.

From this application itself, and from the memorandum filed in support thereof, it does, however, appear that plaintiff has been so far conversant with the business and the books and papers of defendants covering the greater part of this period that he understands fully where the information he desires is to be found, and is able to point out with particularity the books and papers in which it is contained. It would seem, therefore, that the motion is justified in the mind of the mover by the conception that this statute was intended to compel one party, under all circumstances, to contribute, however unwillingly, to the preparation of his opponent's case, or else by the fear that the required books and papers may not be forthcoming, or may not contain true statements, even though produced at the trial. It is not believed that the purpose of this statute was to compel the opposite party to contribute unwillingly to the establishment of his opponent's right of action, unless principles of justice, as distinguished from mere considerations of convenience, demand the same, by reason of the mover's inability to secure the necessary information from any other source, either for the preparation of pleadings, or the preparation of the case for trial. And I am unwilling, in view of the additional bur-

dens that would thus be thrown upon the court, and the undesirability of ruling thus prematurely, and in advance of trial, upon the very substance of the controversy, to extend the office and function of this statute beyond those plainly indicated by the purpose of its enactment. Such does not appear to be the predicament of the plaintiff in the case at bar. He should, in any event, fortify himself, by all the evidence at his command, against any showing that may be made by the defendants through evidence documentary or otherwise. The court, in view of the nice questions affecting the admission of testimony that may be raised at this trial, prefers to express no opinion here as to the rule that will govern the admissibility of such evidence, nor to do so, in effect, by supervising and reviewing the rulings of the clerk at an examination held, if the motion were to be sustained.

Again, defendants have produced the affidavits of the auditor and secretary of the Shubert Theatrical Company, a corporation, to the effect that that company has been the owner of the Shubert Theater since June 19, 1909; that immediately prior thereto, and from May 1, 1909, the theater was the property of the Comstocks Amusement Company, a corporation, and was not the property of the Shuberts, as individuals or as a firm. In opposition thereto, plaintiff states that at the time the former suit was pending he had occasion to inquire into the relations existing between the defendants and the Shubert Theatrical Company, and that one of the defendants informed him that the Shubert Theatrical Company was a corporation used by the defendants as a means and instrumentality of promoting and conducting their own business, and that the defendants own and control a majority of the capital stock of said corporation, are its chief executive officers, and control and dominate its corporate policy and acts. This was the situation, so plaintiff asserts, some 18 months ago.

The statute provides that the court may require the parties to produce books or writings in their possession or power. It has no authority over others than parties to the suit, and it must clearly appear to the court that the parties upon whom a rule is made have the books or writings in their possession or power. Concerning this Mr. Justice Washington, in Bas v. Steele, 3 Wash. C. C. 381, Fed. Cas. No. 1,088, said:

"The party must entitle himself to the benefits of the section by showing that the party was in possession of the papers called for. * * * The court will require reasonable proof of possession."

From what is before it the court cannot say with sufficient certainty at this stage of the proceeding whether the possession and power of these defendants over the writings demanded are sufficient to support a summary rule to produce before trial under pain of the severe penalties provided in this section.

For all the reasons stated, the application for an inspection, and to make copies before trial, as prayed, will be denied; but, in order that there may be no uncertainty that the plaintiff may have access to all these books and writings in the possession and power of the defendants, or under their control, to such extent as they may be needed, and may be desired at the trial as pertinent or material to any issue

therein, the motion is granted to the extent of requiring the defendants, through their agents and employés, whoever the same may be, to get together all the books and papers enumerated in the motion, so far as the same may be in their possession or power, or under their control, and have them present at the trial.    They should have in court all such documents fairly within the enumeration of the motion, and subject to the order of the court, which will enable plaintiff to show the facts desired, provided the same may be ruled to be admissible by the court at the trial; and this will include all such writings whose disposition the defendants have the power to control, whether in the hands of agents, employés, or representatives of defendants, at the place of trial or elsewhere.